## WALLEY *v.* WILEY ET AL.

[No. 8,215. Filed February 25, 1914. Rehearing denied April 29, 1914.]

1. APPEAL.— *Review.*— *Pleading.*— *Duplicity.*—Where the only attack made against an answer in the trial court was by demurrer for want of sufficient facts, the court on appeal need not consider an objection that the pleading was duplicitous. p. 175.

2. PLEADING.—*Duplicity.*—*Motion to Separate.*—The overruling of a motion to separate a duplicitous pleading into paragraphs is not reversible error. p. 175.

3. PLEADING.— *Answer.*— *Theory.*— *Duplicity.*— Although a paragraph of answer discloses more than one fact or circumstance which gives defendant a legal right to do the acts charged in the complaint, it is not objectionable on the ground of duplicity where the averments are so pleaded as to clearly show an intention to charge but one complete defense. p. 175.

4. WATERS AND WATERCOURSES.—*Prescription.*—*Drainage.*—The enjoyment of an easement of drainage over the lands of another with his knowledge and without any objection or agreement between the parties with reference thereto for more than twenty years will ripen into a title by adverse user that cannot thereafter be successfully disputed. p. 177.

5. EASEMENTS. — *Creation.* — *Presumptions.* — *Proof.* — The enjoyment of an easement for more than twenty years, without explanation, is presumed to have been pursuant to a grant, and casts upon the owner of the land the burden of showing that its use was under some license, indulgence, or special contract, inconsistent with a claim of right by the other party. p. 177.

6. WATERS AND WATERCOURSES.—*Surface Waters.*—*Right of Action.* —Where the casting of water upon the land of another, if continued, may ripen into an easement, a right of action for the trespass arises immediately for which at least nominal damages will be awarded. p. 177.

7. WATERS AND WATERCOURSES.— *Prescription.*— *Commencement of Adverse Use.*—The period of adverse use which may ripen into an easement of drainage begins with the first trespass, and not from the time the trespass begins to cause substantial damage. p. 177.

8. WATERS AND WATERCOURSES.—*"Watercourse".*—A watercourse in its legal sense consists of a distinct channel or bed through which

water has flowed immemorially for a substantial portion of each year, though not necessarily continuously, and it does not lose its character as a natural watercourse by the construction of an artificial drain in its course.  p. 177.

9.  WATERS AND WATERCOURSES.—*Natural Watercourse.—Drainage.* —A riparian owner may make use of a natural watercourse as an outlet for any drains that he may construct upon his land so long as the increased flow of water thereby occasioned does not overtax its capacity.  p. 178.

10.  WATERS AND WATERCOURSES.—*Natural Watercourse.—Change to Artificial Course.*—Where a drain through the lands of an upper owner together with a swamp on the lands of the lower owner constitute a natural watercourse, affording adequate drainage for the upper owner's land, and the lower owner undertakes to convert such natural watercourse into an artificial drain through his land, he is bound to construct and maintain such artificial drain to a capacity equal to that of the natural watercourse in its undisturbed condition.  p. 178.

11.  WATERS AND WATERCOURSES. — *Surface Waters. — Jury Questions.*—In an action for damages for casting waters upon plaintiff's land, the questions of whether the stream into which the waters were drained was a natural watercourse, whether defendant had a prescriptive right to drain over plaintiff's land and whether the water so drained overtaxed the capacity of the stream and caused injury to plaintiff's lands, were for the jury.  p. 178.

12.  WATERS AND WATERCOURSES.—*Change from Natural to Artificial Course.—Duty of Lower Owner.—Damages.*—Where a lower owner constructed artificial drains to take the place of an original natural watercourse, it was his duty to keep such drains free from obstruction on his land, if by so doing he could lessen the damage from the flow of surface water from the lands of another.  p. 179.

13.  APPEAL.—*Review.—Consideration of Instructions.*—On appeal the instructions given by the trial court will be considered with reference to each other and as an entirety, and, if thus considered, they fairly present the law, the cause will not be reversed because particular instructions, considered alone, may be erroneous.  p. 179.

14.  APPEAL.—*Review.—Refusal of Instructions.*—There is no error in the refusal of requested instructions that were fully covered by instructions given.  p. 179.

From Dekalb Circuit Court; *Emmett A. Bratton,* Judge.

Action by William Walley against James C. Wiley and others.  From a judgment for defendants, the plaintiff appeals.  *Affirmed.*

*E. B. Dunton* and *John G. Yeagley,* for appellant.

*McNagny & McNagny* and *Leonard, Rose & Zollars,* for appellees.

IBACH, J.—Appellant brought this action against appellees to recover damages. Each of the three paragraphs of complaint charged in substance that the plaintiff owned lands in the vicinity of the lands owned by the defendants and that such defendants collected large quantities of water from off their lands and cast such water upon the lands of plaintiff, causing the same to become valueless for farming purposes, to plaintiff's great damage. To the complaint the defendants filed answer in three paragraphs, but we are required only to consider the action of the trial court in overruling plaintiff's demurrer to the second of these paragraphs. The trial resulted in a general verdict for the defendants, and over a motion for a new trial there was judgment in their favor.

The second paragraph of answer, omitting the formal parts, contains the following averments: "The lands owned by the plaintiff are naturally low, wet and swampy * * * . and no part of said lands has been brought under cultivation until recently. That the said lands owned by the defendants lie west of plaintiff's said lands and upon a higher level, and that the surface of the country gradually slopes from their lands downward to those of the plaintiff, and that defendants' lands have been under cultivation for more than forty years last past. That from time immemorial there has existed a natural watercourse leading from the defendants' said lands eastward, on to and across the said lands of the plaintiff; that said natural watercourse has had for more than thirty years a well defined channel and banks, and that by reason of the lay of the country, the water flowing therein has for said time naturally flowed in said channel away from the defendants' said lands, on to and across plaintiff's said lands; that said natural watercourse for more than thirty years has carried the surface water

which accumulated on defendants' lands, and on lands adjacent thereto, and water poured into said channel by other watercourses on defendants' said lands, and by numerous artificial drains constructed thereon, eastward on to and across plaintiff's said lands. And the defendants further say that for more than thirty years preceding the commencement of this suit, they and their immediate and remote grantors under whom they claim to hold their title to the said lands, so severally owned by them, have used said natural watercourse, and are now so using the same, as a channel to drain off the surplus water from their said lands, and water discharged into said channel by other natural watercourses and by many artificial ditches constructed on their said lands, on to and across plaintiff's lands, and that they and their said grantors have so used said natural watercourse for said period of time under a claim of right to do so made by the defendants and by their said grantors, and that during all of said time said use of said watercourse has been adverse to the plaintiff and his immediate and remote grantors under whom he claims title to said lands, and said use has been exclusive to the defendants and their said grantors and continuous and wholly uninterrupted; that said use of said natural watercourse during all of said time has been with the knowledge of the plaintiff and his said grantor, and also with their knowledge that the defendants and their said grantors claimed the right to perpetually so use the same, and were so using the same, during all of said time adversely to the plaintiff and his said grantors. That said use of said watercourse by defendants is the identical trespass and injury to plaintiff described in his complaint, and for which he therein demands judgment for damages, and not otherwise, and that the defendants and neither one of them has in any other way, manner or form, caused any water to flow on to or across plaintiff's said lands. Wherefore, the defendants separately demand judgment against the plaintiff.''

Appellant demurred to this paragraph for insufficiency of facts to constitute a defense, but now earnestly contends that it contains two distinct theories, one being that they were making a rightful use of a natural watercourse, and the other that they had acquired this right by prescription to cause the waters from off their lands to flow on to appellant's and that such attempt to combine two distinct theories in a single paragraph of answer is in direct violation of the rule against duplicity.   The briefs fail to disclose a motion by appellant to require appellees to separate the answer alleged to contain two defenses, into paragraphs, so that this court is not required to consider the objection urged where the demurrer filed is alone for want of sufficient facts.   *Nesbit* v. *Miller* (1890), 125 Ind. 106, 25 N. E. 148; *Pittsburgh, etc., R. Co.* v. *Brown* (1912), 178 Ind. 11, 97 N. E. 145, 98 N. E. 625.   And, even if such motion had been filed, it is not reversible error for the trial court to overrule a motion to separate into paragraphs a pleading on account of duplicity.   *Show* v. *Ayers* (1897), 17 Ind. App. 615, 618, 47 N. E. 235, and cases there cited; *Everitt* v. *Bassler* (1900), 25 Ind. App. 303, 304, 57 N. E. 560.   It is proper to state, however, that although the paragraph discloses more than one fact or circumstance which gives them a legal right to do the acts charged against them in the several paragraphs of complaint, yet these averments are all so pleaded as to clearly indicate that the pleader intended to charge but one complete defense, namely, a justification of the trespass charged against defendants.   Had the answer been attacked in the court below, as it is assailed here, we could not uphold appellant's contention, for it does no violence to the definite theory rule.   *Caldwell* v. *Bowen* (1913), 179 Ind. 146, 99 N. E. 117.

Error is also assigned in the giving of a number of instructions at the request of appellee.

In support of the answer the evidence shows that appel-

lees' land is higher than appellant's and has been drained for more than thirty years by a natural watercourse which runs through appellees' lands to and over appellant's land, that on appellant's land as a part of such natural watercourse there was a swamp, and appellant's predecessor in title undertook to reclaim this swamp, and for that purpose caused a ditch to be constructed known as the Streeter ditch; that such ditch followed the course of the original natural outlet of the swamp to a creek. He also constructed an artificial drain from the Streeter ditch to the point where such natural watercourse through appellees' lands emptied into the swamp or marsh in order to conduct the waters from the natural watercourse directly to the Streeter ditch. It also appears that this natural watercourse through appellees' lands had been artificially straightened in 1874 and certain artificial drains conducted into it from appellees' lands, and thenceforth it was known as the Wiley-Moughler ditch, that other artificial drains had been led into it in 1886, but that the total flow of water in such watercourse was not increased by the artificial drains, and did not exceed the natural flow through such watercourse in any given period of time, the effect of straightening the watercourse being to cause the water to flow faster, but the effect of the tile-draining of the lands which it drained being to make the waters flow off from them slower.

There is also evidence to prove that after the construction of the artificial drain the lands of appellant were overflowed, but that such overflow was caused by preventable obstruction in the ditch on appellant's lands which led from the Wiley-Moughler ditch to the Streeter ditch. The evidence shows further that appellees and their predecessors in title had made use of such natural watercourse as a means of draining their lands continuously from time immemorial, with the knowledge and acquiescence of appellant and his predecessors in title, and that such easement had been en-

joyed by them during all that time without any hindrance or objection under a claim of right.

Our courts have repeatedly held that where one has enjoyed an easement over the lands of another with his knowledge, and without any objection and without any agreement between the parties with reference thereto, and such adverse enjoyment has continued for more than twenty years, it will ripen into a title which can not thereafter be successfully disputed, and as was said by Monks, J., in the case of *Mitchell* v. *Bain* (1895), 142 Ind. 604, 42 N. E. 230. "Such enjoyment without explanation how it begun is presumed to have been in pursuance of a grant. The owner of the land has the burden of proving that the use of the easement was under some license, indulgence, or special contract, inconsistent with a claim of right by the other party." Thus, though one party has proved a paper title, the other party need only prove twenty years' open, continuous, adverse user, in order to raise the presumption that his user began under a claim of right. When water is cast on the lands of another, or any act done illegally, the continuance of which may ripen into an easement, there is at once a right of action for the trespass, and damages will be awarded therefor, even though so slight as to be only nominal, and the period of adverse user begins from the first trespass, not from the time when the trespass begins to cause substantial damage. *Rennert* v. *Shirk* (1904), 163 Ind. 542, 72 N. E. 546; *Nowlin* v. *Whipple* (1889), 120 Ind. 596, 598, 22 N. E. 669, 6 L. R. A. 159; *Pyott* v. *State* (1908), 170 Ind. 118, 83 N. E. 737.

A watercourse in its legal sense consists of a distinct channel, a bed to the stream and through which water has flowed immemorially, not necessarily continuously, but for a substantial portion of each year, and it has been held by this court that a natural watercourse does not

Vol. 56—12

lose its character as such by the fact that an artificial drain is constructed in its course. *Schwartz* v. *Nie* (1902), 29 Ind. App. 329, 333, 64 N. E. 619.

Another proposition involved in this appeal is that a riparian owner may make use of a natural watercourse as an outlet for any ditches which he may construct upon his land so long as the increased flow of water occasioned thereby does not overtax its capacity, and whether the use of the stream made by the upper proprietor is reasonable is a question for the jury. *Barnard* v. *Sherley* (1893), 135 Ind. 547, 554, 34 N. E. 600, 35 N. E. 117, 24 L. R. A. 568, 41 Am. St. 454, and cases cited; *Muncie Pulp Co.* v. *Koontz* (1904), 33 Ind. App. 532, 537, 70 N. E. 999.

Another proposition of law peculiarly applicable to this case is, if the drain through appellees' lands and the swamp upon appellant's lands constituted together a natural watercourse affording adequate drainage for appellees' land and appellant or his predecessor in title undertook to convert such natural watercourse into an artificial drain through appellant's land they would be bound to construct and maintain such artificial drainage to a sufficient capacity to accommodate the waters that would have been accommodated by the natural watercourse had it been left undisturbed.

All these questions which were for the determination of the jury were submitted to it under proper instructions. As to whether the stream into which the waters from appellees' lands were drained was a natural watercourse, the court very closely followed the discussion of a similar question involved in the case of *New Jersey, etc., R. Co.* v. *Tutt* (1907), 168 Ind. 205, 80 N. E. 420, and *Schwartz* v. *Nie, supra*. As to whether appellees had obtained a prescriptive right to an easement over appellant's lands for the drainage of their lands, and whether such waters had overtaxed the capacity of the stream, and caused injury to appellant's lands, the reasoning made use of by

the courts in the cases of *Mitchell* v. *Bain, supra; Rennert* v. *Shirk, supra; Terre Haute, etc., R. Co.* v. *Zehner* (1906), 166 Ind. 149, 157, 76 N. E. 169, 3 L. R. A. (N. S.) 277; *Roots* v. *Beck* (1887), 109 Ind. 472, 475, 9 N. E. 698; *Barnard* v. *Sherley, supra; Muncie Pulp Co.* v. *Koontz, supra;* and many others of the Supreme Court and this court, was incorporated in the instructions given.

Also the jury was instructed correctly as to appellant's duty to keep the artificial ditches constructed to take the place of the original natural watercourse, free from obstruction on his own land, if by so doing he could lessen his damages, and in presenting this proposition the instructions closely followed the discussion to be found in *Chambers* v. *Kyle* (1882), 87 Ind. 83, 87.

We are satisfied from an examination of all the instructions given that the court very carefully and very fully instructed the jury upon all the material issues in the case. It is a well-settled rule of appellate procedure that all the instructions will be considered with reference to each other and as an entirety and not in dissected parts, and if the instructions taken together fairly present the law to the jury, the cause will not be reversed even if some particular instructions considered alone, unexplained and unqualified might be erroneous. When the instructions given in this case are so considered we are satisfied that the court very fairly and very fully instructed the jury upon all the material issues of the case. It is quite evident also that the court's refusal to give certain of the instructions requested by appellant was for the reason that the same subject-matter was fully covered by others which were given.

Having given this case close consideration we are fully satisfied and convinced that the case was fairly tried below and that all the objections properly presented by appellant must be determined against him. Judgment affirmed.

NOTE.—Reported in 104 N. E. 318. As to essentials to prescription such as will insure title to water, see 93 Am. St. 712. As to the distinguishing character of a watercourse, see 1 L. R. A. (N. S.) 756. On the conversion of artificial into natural watercourse, see 16 L. R. A. (N. S.) 280. See, also, under (1) 31 Cyc. 725; (2) 3 Cyc. 325; (3) 31 Cyc. 146; (4) 40 Cyc. 649; (5) 14 Cyc. 1196; (6, 12) 40 Cyc. 651; (7) 40 Cyc. 651, 649; (8) 40 Cyc. 553, 555, 556; (9) 40 Cyc. 648; (10) 40 Cyc. 663; (11) 40 Cyc. 654; (13) 38 Cyc. 1778; (14) 38 Cyc. 1711.