No. 7879.

TEMPLETON *v.* VOSHLOE.

DRAINAGE.—*Surface Water.*—*Rights of Contiguous Owners.*—Where the situation of two adjoining fields is such that the surface water from rains and melting snows flows naturally from one field upon the other, the owner of the upper field may not construct drains or trenches so as to concentrate the flow of water upon the lower field and increase the wash upon the land.

SAME.—The right of the owner of an upper field to make drains on his own land is restricted to such as are required by good husbandry and the proper improvement of the surface of the ground and as may be discharged into natural channels without inflicting palpable and unnecessary injury on a lower field of an adjacent owner.

From the Posey Circuit Court.

*W. Loudon*, for appellant.

*A. P. Hovey*, *G. V. Menzies* and *W. P. Edson*, for appellee.

NIBLACK, C. J.—In this action the plaintiff, Andrew J. Templeton, complained of the defendant, William Voshloe, and said that at the time of the commission of the grievances hereinafter alleged he was, and still continued, in the lawful possession of a certain described tract of land in Posey county, and that the defendant was in the possession of a certain other tract of land adjoining the plaintiff's said tract, also fully described ; that within about ten rods of the boundary line between the said two tracts of land, and parallel with said line, there runs entirely across the said tract of the defendant a natural ridge or elevation of land about two and one-half feet in height, which ridge, in its natural condition, causes all the water which falls on the defendant's tract lying east of said ridge, and which flows upon it from a southeasterly direction, to flow back from the plaintiff's land, in a southeasterly direction, over and across the land of the defendant and lands other than the land of the plaintiff, contiguous thereto ; that the defendant on or about the 1st day of March, 1878, unlawfully and wrongfully cut through said ridge, or elevation of land, in two places, to the depth of two and one-half feet and four feet wide, and extended from said openings so cut by him a ditch three feet wide and two feet deep to the land of the plaintiff, and thereby caused a great quantity of water to flow continuously from that time to the time of bringing this suit over and upon the said land of the plaintiff, injuring and destroying the crops of corn, wheat and grass upon the same, to the damage of the plaintiff in the sum of one hundred dollars.

The defendant demurred to the complaint, and his demurrer was sustained. The plaintiff refusing to plead further, final judgment was rendered in favor of the defendant upon demurrer.

We have only to consider the question of the sufficiency of the complaint. In the argument in this case, a great number of authorities have been cited bearing upon the gen-

eral subject of surface water, caused by rain and melting snow, but only a portion of the authorities thus cited have any direct application to the precise question involved in this appeal.

In referring to the subject under discussion, Washburn on Easements, marginal page 353, says:

"Before proceeding to consider the law as to water percolating through the earth, beneath its surface, it is necessary to refer to a few principles which seem now to be pretty well settled as to the respective rights of adjacent land-owners, in respect to waters which fall in rain, or are in any way found upon the surface, but not embraced under the head of streams or watercourses, nor constituting permanent bodies of water, like ponds, lakes, and the like. It may be stated as a general principle, that, by civil law, where the situation of two adjoining fields is such that the water falling or collected by melting snows, and the like, upon one, naturally descends upon the other, it must be suffered by the lower one to be discharged upon his land if desired by the owner of the upper field. But the latter can not, by artificial trenches, or otherwise, cause the natural mode of its being discharged, to be changed to the injury of the lower field, as by conducting it by new channels in unusual quantities on to particular parts of the lower field."

The principle recognized by the text thus quoted from is well illustrated and sustained by several leading cases referred to, and commented upon, by the learned author.

From these and other decided cases, we deduce the doctrine that the owner of the upper field may not construct drains or excavations so as to form new channels on to the lower field, nor can he collect the water of several channels and discharge it on the lower field so as to increase the *wash* upon the same. The right of the owner of the upper field to make drains on his own land is restricted to such as are required by good husbandry and the proper improvement of

the surface of the ground, and as may be discharged into natural channels, without inflicting palpable and unnecessary injury on the lower field.

As to where, and under what circumstances, the owner of the lower field may obstruct or direct the flow of surface water which naturally descends upon his land, we need not now inquire, as that question is in no way involved in the proper decision of this cause.

Tested by the doctrine deduced and announced as above, the complaint in this case appears to have been sufficient upon demurrer. *Butler* v. *Peck*, 16 Ohio St. 334; *Martin* v. *Riddle*, 26 Pa. St. 415: *Kauffman* v. *Griesemer*, 26 Pa. St. 407; *Martin* v. *Jett*, 12 La. 686; Angell on Watercourses, sec. 108, *et seq.*; *Miller* v. *Laubach*, 47 Pa. St. 154; *Livingston* v. *McDonald*, 21 Iowa, 160; *Adams* v. *Walker*, 34 Conn. 466; Wood on Nuisances, 403, sec. 386; *Pettigrew* v. *The Village of Evansville*, 25 Wis. 223; *Taylor* v. *Fickas*, 64 Ind. 167; *Schlichter* v. *Phillipy*, 67 Ind. 201; *Hoyt* v. *The City of Hudson*, 27 Wis. 656; Washburn on Easements, pp. 209, 210; Cooley on Torts, 577; *Waffle* v. *The N. Y. C. R. R. Co.*, 58 Barb. 413.

The judgment is reversed, with costs, and the cause remanded for further proceedings.